```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/24/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
MABLE RIVERA et al.,                            :
:
              Plaintiffs,     :   06 Civ. 7077 (TPG)
:
    - against -                              :   **OPINION**
:
:
JOHN MATTINGLY et al.,                          :
:
             Defendants.     :
:
------------------------------------------------x

Defendant John Johnson moves for judgment on the pleadings on the ground that he is immune from suit. Plaintiffs oppose the motion. The motion is denied.

## **Background**

The claims in this case arise from the decision of New York City's Administration for Children's Services ("ACS") to remove three children (the infant plaintiffs in this action) from the home of plaintiffs Mable and Anthony Rivera, the children's foster parents and relatives. Two of the children had lived with the Riveras for over six years before the removal; the third child had lived with the Riveras for over seven years. All of the children are the grand-nieces of the Riveras. For that reason, the complaint refers to the Riveras as the children's "kinship foster parents."

The complaint alleges the following chronology.

After the children were removed from the Rivera home on March 31, 2006, a conference was held between ACS and the Riveras to review the removal. In a written decision issued on May 8, ACS upheld the decision to remove the children.

The Riveras subsequently sought review of the decision by the state Office of Children and Family Services ("OCFS"). A hearing was scheduled for June 12, but was adjourned to allow for the completion of an investigation into the allegations that precipitated the removal. That investigation determined that the allegations were unfounded. Plaintiffs appeared for the rescheduled hearing on August 30 before an OCFS administrative law judge ("ALJ"). ACS staff did not appear. Plaintiffs informed the ALJ that ACS had advised them that it did not intend to appear, and had therefore waived its right to be present. Nonetheless, the ALJ declined to proceed with the hearing at that time because of ACS's absence.

Although the complaint does not address this, the briefs indicate that an OCFS hearing ultimately began on October 2. After being interrupted for some time, it was completed on November 7. The hearing resulted in a decision, rendered on December 13, which found that the removal of the children was arbitrary and capricious. However, rather than ordering ACS to return the children to the Riveras, OCFS remanded the matter to the City for reconsideration. The children were ultimately returned to the Riveras upon order of the federal court.

Plaintiffs have asserted claims under § 1983 against numerous defendants, including the City of New York, ACS and its Commissioner and employees, and employees of the private foster care agency that acts as a contractor for ACS.  Plaintiffs have also asserted claims against John Johnson, the former Commissioner of the OCFS.  Plaintiffs claim that the policies of the City, ACS, and OCFS are unconstitutional because they allow the removal of foster children without due process or probable cause.  They also allege that defendants' specific actions with respect to the Rivera children were unconstitutional.

With respect to Johnson, plaintiffs allege that he promulgated and required the enforcement of unconstitutional regulations governing the OCFS review process.  For instance, plaintiffs challenge the regulations governing what burden of proof is used, who acts as the decision maker, and whether foster parents have a right to counsel and to conduct cross-examination in OCFS hearings.  Plaintiffs also challenge OCFS policy, which was allegedly promulgated by Johnson, that does not require OCFS to order the immediate return of children to their foster homes upon a finding that a removal had been improper.  Plaintiffs allege that these defects in OCFS policy affected plaintiffs during the OCFS review in this case.  Plaintiffs thus seek compensatory and punitive damages, as well as a declaratory judgment that the OCFS hearing procedures are unconstitutional.

Johnson has moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. After Johnson made this motion, plaintiffs amended the complaint. Johnson answered the amended complaint, but did not seek to amend his motion. Since the amendments to the complaint do not affect the allegations against Johnson or the grounds asserted in Johnson's motion, the court deems Johnson's original motion to apply to the amended complaint and the pleadings filed in response thereto.

Johnson asserts three grounds for his motion. First, he argues that he is entitled to Eleventh Amendment immunity from any claims against him in his official capacity. Second, he argues that he is entitled to absolute judicial immunity from certain claims asserted against him in his individual capacity. Third, he argues that he is entitled to qualified immunity from all claims against him in his individual capacity.

## Eleventh Amendment Immunity

When state officials are sued under § 1983 in their official capacity, they are immune from suit by virtue of the Eleventh Amendment. Edelman v. Jordan, 415 U.S. 651, 663 (1974); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). However, state officials do not receive Eleventh Amendment immunity when they are sued in their individual capacity, even when they are sued for injuries inflicted as part of an "official" act. Hafer v. Melo, 502 U.S. 21, 31 (1991).

Johnson argues that the complaint could be read to assert claims against him in his official capacity. Moreover, the caption of the complaint names Johnson "individually and as Commissioner." Plaintiffs, however, insist that they are asserting claims against Johnson only in his individual capacity. The court accepts this representation. Of course, to the extent that plaintiffs have asserted any claims against Johnson solely in his official capacity, those claims are barred by the Eleventh Amendment.[1]

Johnson also argues that the claims purporting to be against him in his individual capacity (1) provide insufficient detail about his personal involvement in the events giving rise to this action and (2) amount to an attempt to circumvent the Eleventh Amendment. Contrary to Johnson's contention, however, the complaint alleges his personal involvement in formulating and applying unconstitutional policies for OCFS hearings, and there appears to be no attempt to circumvent the Eleventh Amendment by asserting individual-capacity claims. It is well established that state officials can be held personally liable under § 1983 for violating the Constitution in the course of their official acts. E.g., Hafer, 502 U.S. at 28-29.

---

[1] In his reply brief, Johnson suggests that he is entitled to Eleventh Amendment immunity on the basis of this court's decision in Balbuena v. Mattingly, No. 05-cv-2986 (TPG), 2007 WL 2845031 (Sept. 28, 2007). That case has no application to the present motion.

## Judicial Immunity

Johnson contends that he is entitled to absolute judicial immunity from suit. Although Johnson is not a judge, he appears to be invoking the immunity that protects the ALJs employed by his agency. However, Johnson has cited no cases, and the court has found none, that extend judicial immunity to non-judicial administrative officials. Even when performed by a judge, acts "involved in supervising court employees and overseeing the efficient operation of a court . . . [are] not themselves judicial or adjudicative." Forrester v. White, 484 U.S. 219, 229 (1988). Thus, plaintiffs' claims against Johnson for his failure to establish proper procedures for administrative hearings are not barred by judicial immunity.

## Qualified Immunity

The doctrine of qualified immunity protects officials from liability under certain circumstances. For a claim of qualified immunity to be defeated, a plaintiff must have alleged facts constituting a violation of a constitutional right, and the right at issue must have been clearly established at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). For a right to be "clearly established," it must have been defined clearly enough for it to be "apparent" to a reasonable official "that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

At the time in question, the following principles were clearly established in the law, principally by the Second Circuit's decision in Rivera v. Marcus, 696 F.2d 1016 (2d Cir. 1982). Under Rivera, kinship foster parents "have a liberty interest in preserving the integrity and stability of [their] family." 696 F.2d at 1024-25. Thus, when the state decides to remove a child from a foster home and the foster parent is a relative of the child, the foster parent is entitled to due process protections. Id. These protections include a hearing at which the foster parent has the right to be represented by retained counsel, to be informed of the reasons for removal, to present evidence, to cross-examine witnesses, and to receive a written decision from an impartial decision maker. Id. at 1028-29. This hearing should occur prior to removal, unless "exceptional circumstances" preclude that. Id.

In the complaint, plaintiffs allege that "Johnson has a policy or practice to unnecessarily delay commencing, completing, and deciding administrative hearings on kinship foster parents' appeals of the removals of foster children." Plaintiffs also allege that it is Johnson's practice not to require the return of foster children to their relatives' care even after OCFS finds that the children's removals were improper. Finally, plaintiffs claim that the state regulations governing the OCFS hearings, which Johnson required his employees to apply, do not allow foster parents to be informed of the reasons for removal, to cross-examine all witnesses, or to be represented by counsel at the hearing.

These are allegations of the violations of due process rights established by <u>Rivera</u>. A reasonable official would have known of these rights.

Johnson argues that he could have reasonably believed that (1) <u>Rivera</u> required an individualized investigation into the biological relationship between foster parents and foster children, which could not have occurred before the hearing, and (2) New York's hearing procedures complied with <u>Rivera</u>. These contentions are of doubtful merit. Johnson is surely entitled to defend the case. However, the showing of plaintiffs on the present record is sufficient to preclude a defense of qualified immunity.

## Conclusion

Johnson is not entitled to immunity on any of the grounds asserted in his motion. His motion for judgment on the pleadings is therefore denied.

SO ORDERED.

Dated: New York, New York
       March 24, 2009

*/s/ Thomas P. Griesa*
Thomas P. Griesa
U.S.D.J.