UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MABLE RIVERA, et al., <br><br>               Plaintiffs, <br><br>-against- <br><br>JOHN MATTINGLY, et al., <br><br>               Defendants. | 06-CV-7077 (LAP) <br><br>MEMORANDUM & ORDER |

LORETTA A. PRESKA, SENIOR UNITED STATES DISTRICT JUDGE:

    Before the Court are objections to Magistrate Judge Henry Pitman's Report and Recommendation ("R&R") filed by Mable and Anthony Rivera ("the Riveras" or "Plaintiffs"). (See dkt. no. 226.) Judge Pitman recommended that the default judgment entered against defendants Fabian Njoku and Anny Garcia be vacated and that the claims against them be dismissed. (See dkt. no. 225 at 4.) For the reasons set forth below, the R&R is ADOPTED in its entirety, the default judgment is VACATED, and the claims against Njoku and Garcia are DISMISSED.

    **I.   Background**

    Because the parties have not objected to the facts as laid out in the R&R, the Court adopts the R&R's "Facts" section. See Roberts ex rel. Phillip v. Happiness Is Camping, Inc., No. 10 Civ. 4548, 2012 WL 844331, at *1 (S.D.N.Y. Mar. 13, 2012). The

1

Court assumes the parties' familiarity with the facts and summarizes only those relevant to the Riveras' objections below.[1]

### A. Factual Background

At various points between December 1999 and June 2007, the Riveras were the kinship foster parents of their grandnieces, sisters E.S., B.C., and J.C.  During that time, New York City's Administration for Children's Services ("ACS") entrusted Family Support Systems Unlimited, Inc. ("FSSU") with the care of E.S., B.C., and J.C.  FSSU is a foster care agency that provides care to children who have been removed from their homes and placed in the care of ACS.  The Riveras entered into a foster parent contract with FSSU providing, in relevant part, that the children may be removed at any time but that the Riveras have a right to challenge the removal through an Independent Review and a Fair Hearing.  (Dkt. no. 182 ¶¶ 20-22.)  Garcia and Njoku are FSSU caseworkers who were assigned to supervise the placement of J.C., B.C., and E.S.

From their infancy until March 31, 2006, J.C., B.C., and E.S. lived with the Riveras as well as Ashley and Laporsha, E.S. and B.C.'s older sisters.  Mrs. Rivera's adult daughter, Rhonda Goddard, and her two sons lived in an apartment in the same building.  On March 31, 2006, E.S. and B.C.'s birth mother

---

[1] All facts are taken from the R&R unless otherwise stated. (See dkt. no. 225.)

contacted Garcia and alleged, based on a report from Ashley, that Laporsha was in Ms. Goddard's apartment having sex with Ms. Goddard's boyfriend, Leandro Johnson.  Before investigating or going to the Riveras' home--as is required by FSSU policy--Garcia reported to the New York State Central Register of Child Abuse and Maltreatment that Mr. Johnson was sexually abusing the foster children and that Mrs. Rivera was culpable.

After making her report, Garcia and her supervisor visited the Riveras' home.  There, Ashley stated Johnson had sex with Laporsha and showed her a pornographic video.  Laporsha denied this claim and told Garcia and her supervisor that Ashley was trying to get her in trouble.  After the home visit, Mrs. Rivera took J.C., B.C., and E.S. to the hospital for medical examinations, and Garcia and her supervisor accompanied them.  Physicians examined the children and concluded that there was no evidence of sexual assault or abuse.  Notwithstanding, Garcia and her supervisor took J.C., B.C., and E.S. and placed them into the care of new foster parents.

Although the FSSU employees did not inform the Riveras of their rights, the Riveras requested an Independent Review of the removal.  The Independent Review Officer issued a written decision upholding the removal, and the Riveras then requested a Fair Hearing before New York's Office of Children and Family Services ("OCFS").  Before the hearing was held, (1) ACS

3

investigated Garcia's allegations and determined that they were unfounded, and (2) a FSSU caseworker separately approved the Riveras' home.  Garcia still refused to return J.C., B.C., and E.S. to the Riveras.  A Fair Hearing was held in December 2006, and OCFS issued a decision that FSSU and the City acted arbitrarily in removing J.C., B.C., and E.S.  Only then were the children returned to the Riveras.

### B. Procedural History

In response to the removal of J.C., B.C., and E.S, the Riveras filed a § 1983 suit against numerous defendants, asserting violations of the Fourth and Fourteenth Amendments.  (See dkt. no. 1; see also dkt. no. 63 (amending complaint).)  The claims against most of the defendants have been resolved through motion practice.  On June 19, 2008, the Riveras dismissed their claims against Ruth Thomas.  (See dkt. no. 82.)  On September 12, 2011, the Court granted summary judgment to Family Support Systems Unlimited, Andrea Cummings and Rehema Bukenya.  (See dkt. no. 139.)  On March 30, 2015, the Court granted summary judgment to the City of New York, John Mattingly, Mina Shah, Michael Warren, Carolyn Williams, Diana Cortez, and John Johnson.  (See dkt. no. 208.)  Those decisions left only two defendants: Njoku and Garcia.

In the 2011 summary judgment ruling, the Court made two important rulings.  First, the Court determined that the Fourth

4

Amendment was not implicated given J.C., B.C., and E.S. were legally in the State's custody, not the Riveras'.  (See dkt. no. 139 at 23-24.)  And second, the Court found that the Riveras' due process claim failed for two reasons: (1) although the Riveras possessed a liberty interest in the stability of their foster family, that interest did not implicate a fundamental right, (see id. at 21-22); and (2) the Riveras' procedural due process rights were not violated because state law authorized the immediate removal of the children and the Riveras were able to secure prompt and meaningful post-removal review of the decision, (see id. at 15-20).

Defendants Njoku and Garcia originally were represented by counsel and participated in the early stages of the action, but they subsequently refused to communicate or cooperate with counsel.  As a result, the Court allowed counsel to withdraw.  (See dkt. no. 83.)  Since that time, Njoku and Garcia failed to answer the amended complaint and have not taken any steps to defend against Plaintiffs' claims.  (See dkt. no. 225.)  Consequently, the Court issued an order to show cause for why default judgment should not be entered but received no response.  (See dkt. no. 213.)  On December 11, 2015, the Court entered a judgment of default against Njoku and Garcia and referred the matter to Judge Pitman to conduct an inquest.  (See dkt. no. 215.)

## II. R&R

On June 23, 2017, and even though Njoku and Garcia still failed to appear, Judge Pitman issued an R&R recommending that the default judgment against Njoku and Garcia be vacated and the claims against them dismissed.  (See dkt. no. 225.)  Judge Pitman relied on the principle in Frow v. De La Vega, 82 U.S. 552 (1872), to conclude that, in the context of joint and several liability, "a summary judgment in favor of the answering defendants will accrue to the benefit of the defaulting defendant."  (Id. at 19.)  In other words, because Cummings and Bekunya--against whom the Riveras asserted identical claims--are not liable for allegedly violating the Fourth or Fourteenth Amendments, it would be "impossible for Njoku and Garcia to have violated them."  (Id. at 23.)  Judge Pitman also recommended declining jurisdiction over the pendant state law claims against Njoku and Garcia. (See id. at 24.)

## III. Objections

The Plaintiffs filed objections to the R&R on July 7, 2017. (Dkt. no. 226.)  Plaintiffs lodge four principal objections:

- The R&R's recommendation violates the doctrine of the law of the case. (Id. ¶¶ 2-3.)

- The R&R contained errors of law, namely by issuing "contradictory" statements of law regarding the Riveras' interest in the integrity of their foster family.  (Id. ¶¶ 4-6.)

- Judge Pitman misapplied Frow.  (Id. ¶¶ 7-10.)

6

- The R&R adopted erroneous rulings in the Court's summary judgment decision, which the Riveras intend to appeal. (Id. ¶ 11.)

The Court confines its review of the R&R to these objections.

**IV. Legal Standard**

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth within a magistrate judge's R&R. 28 U.S.C. § 636(b)(1)(C). When there are no objections to the R&R, or where the objections are "merely perfunctory responses, . . . reviewing courts should review a [R&R] for clear error." Edwards v. Fischer, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006) (internal quotation marks omitted). "Where there are objections, however, the court must make a de novo determination as to those portions of the report to which objections are made." McKiver v. City of New York, No. 17 Civ. 4411, 2018 WL 3628840, at *3 (S.D.N.Y. July 23, 2018). "It is sufficient that the court arrive at its own independent conclusion regarding those portions of the report to which objections are made." Braxton v. City of New York, No. 17 Civ. 199, 2020 WL 1303558, at *2 (S.D.N.Y. Mar. 19, 2020) (quotation marks omitted).

Default judgments are "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron

Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1983).  The scope of the district court's discretion in the context of a default judgment is grounded in the court's preference for "resolving disputes on the merits."  Id.

## V. Discussion

### A. Law of the Case

The Riveras' first claim that the Court failed to follow the doctrine of the law of the case fails as a matter of law.  As the Court previously stated in its summary judgment ruling, the law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  (Dkt. no. 208 at 19.)  However, this doctrine is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment," Maraschiello v. City of Buffalo Police Dep't, 709 F.3d 87, 97 (2d Cir. 2013), and "permits a change of position if it appears that the court's original ruling was erroneous," Rezzonico v. H&R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999).  Put plainly, district court rulings are subject to revision any time before the entry of a final judgment.  See id.

Moreover, the law of the case doctrine is inapplicable to default judgments as the "doctrine only applies to 'issues that have actually been decided.'"  Maersk, Inc. v. Neewra, Inc., 687 F. Supp. 2d 300, 334 (S.D.N.Y. 2009).  In this case, Njoku's and

8

Garcia's liability was not addressed on the merits, and the default judgments were entered on account of their failure to appear before this Court.  (Dkt. no. 215.)  Therefore, the law of the case doctrine is inapplicable, and the Court is not bound by its prior entry of default against Njoku and Garcia.

**B. R&R Errors of Law**

The Riveras' next claim that the R&R contained errors of law.  Judge Pitman's R&R states that "no cases in this Circuit have held that a biologically-related foster parent has a fundamental right to maintain the stability of her family." (Dkt. no. 225 at 22.)  However, the Court also stated that "plaintiffs have shown that they possess a constitutionally protected liberty interest in the integrity of their kinship foster family as a matter of law."  (Dkt. no. 208 at 21.)  The Riveras allege that these statements are contradictory and thus an error of law. (Dkt. no. 226 ¶ 4.)

The Riveras misunderstand the application of these statements.  Any "fundamental right to maintain[] the stability of her family" would sound in substantive due process, while a "liberty interest in the integrity of their kinship foster family" would be a matter of procedural due process.  (Dkt. no. 139 at 21, 16.)  "Thus, even though a plaintiff may have a liberty interest sufficient to secure procedural due process protections, that interest might not be so fundamental that

9

substantive due process protections are triggered." (Id. at 21.) While the Plaintiffs may have a liberty interest in their kinship foster family, they do not have a "fundamental right to substantive due process protections." (Id.) The Riveras mistakenly equate "fundamental right" with "liberty interest," even though caselaw from the Court of Appeals makes plain that those concepts are distinct. Therefore, Judge Pitman was not mistaken on the application of these principles and no error of law was committed. Plaintiffs do not object to Judge Pitman's analysis regarding their procedural due process rights, and the Court can discern no clear error.

### C. Frow

Next, the Riveras claim that the R&R erred by relying on the rule in Frow. Plaintiffs argue that Frow was only intended to be applied in cases of true joint liability, but in this case, the claims are joint and several. Plaintiffs maintain that claims may logically fail against certain defendants but succeed against other defendants. They argue that the liability attached to Njoku and Garcia would not result in inconsistent adjudications.

"Courts within this Circuit have continued to cite Frow as relevant authority even in cases outside the context of true joint liability." El Omari v. Buchanan, 20 Civ. 2601 (VM), 2021 WL 465431, at *2 (S.D.N.Y. Feb. 9, 2021). This Circuit supports

the application of Frow to cases that "do not involve true joint liability but in which defendants are merely similarly situated." Id. (quotation marks omitted). A default judgment "entered against one defendant . . . cannot stand when it would be logically inconsistent for some defendants to be held liable while others are not." Id. at 3 (quotation marks omitted).

That is the case here. Njoku and Garcia can point to the summary judgment proceedings where this Court concluded that the Plaintiffs were not entitled to search and seizure protections and Plaintiffs' due process rights were not violated. (Dkt. no. 139.) Holding Njoku and Garcia liable would lead to inconsistent judgments as the defendants to this action are similarly situated to the other defendants.[2] Njoku and Garcia were both FSSU employees, and the claims against them were identical to the other defendants. (Dkt. no. 63 ¶¶ 80, 81, 90,

---

[2] The Riveras', hoping to evade this conclusion, offer two additional arguments. First, they argue that Garcia's actions in alerting the State Central Register of Child Abuse and Maltreatment and falsely accusing Plaintiffs of child abuse shows liability on behalf of Garcia. (See dkt. no. 226 ¶ 9.) Plaintiffs are wrong: For the same reasons that Defendants' other actions do not violate the Fourth and Fourteenth Amendments, Garcia's conduct does not either. And second, Plaintiffs point to counsel's withdrawal from representation of Njoku and Garcia as evidence that they were incapable of "adequately protecting the interests of . . . Njoku and Garcia." (Id. ¶ 10.) However, there is nothing in the record that indicates the reason for the withdrawal or that Njoku and Garcia had separate interests from their co-defendants.

113).  Thus, holding Njoku and Garcia liable in this action would be inconsistent with the past judgments of this Court.

Moreover, even if the Court were to credit Plaintiff's position that Frow should not apply, Plaintiffs would still lose the case on the merits.  The court in Frow merely outlines certain situations in which it would be inappropriate to enter default judgment, such as cases that involve true joint liability.  Frow, 82 U.S. at 554.  However, the Court is not required to enter default if the rule in Frow is not satisfied.  Id.  To the contrary, the Court has discretion to vacate the judgment independent of Frow.

In short, granting a default judgment against Njoku and Garcia would provide for inconsistent judgments.  Therefore, the Court agrees with Judge Pitman that the judgments against Njoku and Garcia should be vacated.

**D. R&R Adoption of Court's Rulings**

Finally, the Riveras claim that Judge Pitman erred by adopting prior rulings of the Court in his analysis.  (See dkt. no. 226.)  They predicate this claim on their intention to appeal the Court's summary judgment rulings.  But just because the Riveras believe the Court's prior rulings are incorrect does not mean it was erroneous for Judge Pitman to rely on them.  To the contrary, it was entirely reasonable for him to do so.  The Riveras have the right to appeal following final judgment in

this case and will have the opportunity to address their claims of error in those proceedings. The Court need not consider them here.

*   *   *   *   *

In sum, Judge Pitman properly concluded that the default judgment against Njoku and Garcia should be vacated, and all claims against them dismissed. To the extent that the Riveras' remaining objections are not specifically addressed above, the Court has considered them and found them to be meritless.

## VI. Conclusion

For the foregoing reasons, the Court adopts the R&R in its entirety. The default judgment entered against Njoku and Garcia [dkt. no. 215] is VACATED, and the claims against them are DISMISSED. The Clerk of the Court shall (1) mark the action closed and (2) all pending motions denied as moot.

**SO ORDERED.**

Dated:   April 7, 2021
         New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge